### J. A. J. MASON v. J. R. BUMPASS.

(No. 880, Op. Book No. 2, p. 569.)

APPEAL from Rockwall County.  Opinion by WALKER, A. S., J.

§ **1338.** *Mortgage; no particular words or form are necessary to constitute a.*  There were added to a promissory note, and before its signature, so as to form part of the instrument executed, the following words, viz.:  " A first lien or mortgage is hereby declared on one pair of

large mules now in my possession, known as the Bumpass mules, until this note and interest is paid." In Texas, a mortgage is but a security. [Wright v. Henderson, 12 Tex. 43; Mann v. Falcon, 25 Tex. 271; Belt v. Raguet, 27 Tex. 482; Walker v. Johnson, 37 Tex. 127.] No particular form is necessary to constitute a mortgage. It must clearly indicate the creation of a lien, specifying the debt to secure which it is given, and the property upon which it is to take effect. [Jones on Mortgages, § 60.] Again, no particular words or form of conveyance are necessary to constitute a mortgage. [Herman on Chattel Mortgages, § 19.] Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage. It is not even necessary that the contract should be in express terms a security, for equity will often imply this from the nature of the transactions between the parties. [Jones on Mortgages, § 162.] It is considered that the instrument here exhibited was at least evidence of an equitable mortgage.

§ 1339. *Exempt personal property; wife's consent not necessary to the validity of its sale or alienation.* If the mules were community property the husband could sell them without consulting his wife. Her consent to the alienation of the homestead is a statutory and constitutional condition to its sale. Not so as to other property which is exempt from forced sale. The making of such mortgage was not forbidden by any statute law, nor has it ever been held, so far as we are advised, to be against public policy.

§ 1340. *Exemption laws; plea of exemption; "forced sales," what are.* The constitution of 1869, art. XII, sec. 15, declares: "The legislature shall have power, and it shall be their duty, to protect by law from *forced sale* a certain portion of the property of heads of families." This clause may be considered as having been adopted with reference to the well defined judicial definition of the term "forced sale," made in Sampson & Keen v. Williamson, 6 Tex. 110, as including "every sale made

under the process of the courts in the mode prescribed by law." If so, it included judicial sales enforcing liens upon such exempted property. The act of 1870 [Pas. Dig. art. 6834], and which was in force at the date of the contract in controversy, was the legislative exercise of the power and authority thus imposed. It would follow, then, that when the contract was made, the maker of a mortgage upon exempt property, the possession of which he retained, could recall his submission of the property to the debt, and invoke the protection of the exemption laws against any judicial proceedings looking to such forced sale. As the law was at the execution of the contract, the plea was a defense. The constitution of 1876 on this subject [art. XVI, sec. 49] is as follows: "The legislature shall have power, and it shall be its duty, to protect by law from *forced sale* a certain portion of personal property of all heads of families, and also of unmarried adults, male and female." In the Rev. Stats., art. 2335, the exemptions of the act of 1870 were continued, with some additional articles. The effect of the entire chapter on the subject is, however, qualified by art. 2342, Rev. Stats., as follows: "The exemption of personal property provided for in this chapter shall not apply . . . to other debts which are secured by a lien upon such property."

§ **1341.** *Exemptions are matters of public policy, grace and favor, dependent upon the will of the state; a debtor has no vested right in a particular remedy.* The extent and character of property exempt from liability for debts are matters of public policy. The debtor cannot have a vested right to any particular remedy, or that the creditor's remedy against him as to exemptions shall not be altered or repealed. [Cooley's Const. Lim. 287.] As is well said by the supreme court of Georgia, "Debtors have no vested right not to pay their debts. What they have and what they acquire the state may subject to process for the satisfaction of creditors. If the state will furnish the process and allow it to run, noth-

ing that the debtor owns is beyond its reach. There is no fastness that can afford shelter against public authority. Exemption of property from levy and sale for the payment of debts is but a privilege for the time being — mere grace and favor, dependent upon the will of the state." [Harris v. Glenn, 56 Ga. 96.] Nor does the partial repeal of the exemption in favor of lien creditors impair the obligation of contracts affected thereby. Such repeal rather strengthens the obligation. No court has ever held that the remedy cannot be enlarged, since in no sense can that impair the obligation to pay. The debtor's promise is absolute. The contract casts upon him the obligation to pay. No additional remedy can add to that obligation. [Sparger v. Cumpton, 54 Ga. 59.] The effect, therefore, of the repeal of the exemption as to lien debts was effectual as to past incumbrances as well as prospective. The excluded plea did not, therefore, present a defense, and there was no error in its exclusion.

November 15, 1880.                    Affirmed.